IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAMELA O.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

Case No. 3:24-cv-00458-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

    Plaintiff Pamela O. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in July 1959, plaintiff alleges disability beginning July 30, 2014 – which coincides with the end of her work contract – due to chronic neck, back, and shoulder pain, chronic headaches, thyroid disorder, and sleep issues. Tr. 221, 228. Her application was denied initially and upon reconsideration. On October 18, 2022, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 44-71. On October 31, 2022, the ALJ issued a decision finding plaintiff not disabled. Tr. 32-43. After the Appeals Council dismissed her request for review, plaintiff filed a complaint in this Court. Tr. 1-5.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity "from her alleged onset date of July 30, 2014 through her date last insured of December 31, 2016." Tr. 34. At step two, the ALJ determined "claimant did not have a severe impairment or combination of impairments" and concluded that plaintiff was not disabled during the relevant dates. Tr. 35, 39.

## DISCUSSION

Plaintiff argues the Appeals Council erred by (1) dismissing her request as untimely; (2) concluding plaintiff did not have a severe medically determinable impairment or combination of impairments; and (3) discrediting plaintiff's subjective symptom statements.

---

[2] The record before the Court is approximately 700 pages, but with multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

**I.      Timeliness**

Plaintiff contends the Appeals Council erred in dismissing as untimely plaintiff's request for review of the ALJ's unfavorable decision. On December 18, 2023, the Office of Appellate Operations notified plaintiff that her request for review was filed late and instructed plaintiff to send a statement and any evidence explaining why plaintiff did not timely file the request for review. Tr. 6. In this letter, the Office of Appellate Operations stated that it would not act for 30 days to allow plaintiff to submit such evidence. Tr. 7. The letter continued: "if we do not hear from you within 30 days, we will assume that you do not want to send us more information" and will therefore dismiss the request for review. *Id.* Plaintiff did not submit additional information within the provided timeframe, and on January 30, 2024, the Appeals Council dismissed plaintiff's request for review. The Appeals Council's reasonable dismissal of plaintiff's request for review is affirmed as plaintiff failed to explain her untimely request for review as instructed.

**II.     Severity**

Plaintiff next alleges the ALJ erred at step two by finding that none of plaintiff's impairments were severe, either together or in combination. An impairment is severe if it "significantly limit[s]" claimant's ability to do basic work activities, which are defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1520(c); SSR 85-28, *available at* 1985 WL 56856. The step two threshold is low; the Ninth Circuit describes step two as a "de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert,* 482 U.S. 153–54 (1987)). Accordingly, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when [her] conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28, *available at* 1985 WL 56856).

Page 3 – OPINION AND ORDER

Here, the ALJ's decision meets this narrower standard by citing to medical evidence in the record that clearly establish her conclusion that plaintiff "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months." Tr. 35. Notably, plaintiff stated that she stopped working because her contract ended and was laid off. Tr. 221. Plaintiff elaborated that her impairments did not cause her to make changes in her work activity. Tr. 222. These statements are supported by the lack of significant or persistent medical issues around the time plaintiff alleges her disability began. Tr. 461-487.

At an annual wellness examination in April 2014 – three months before plaintiff's alleged onset of disability – plaintiff noted headaches and dizziness but reported that overall "she [was] doing well" other than experiencing some stress at work. Tr. 461-462. Plaintiff did not discuss the frequency or symptoms and was described by her doctor as "alert, cooperative, no distress." *Id*. During the dates at issue, plaintiff did not report issues with chronic headaches to her medical providers and showed no signs of distress or other pain behavior associated with chronic headaches while seeing medical providers. Tr. 303-25, 377-379. Plaintiff also reported "no frequent headaches" at a medical examination for sudden onset vertigo in September 2016. Tr. 378.

Plaintiff did not report dizziness or vertigo between her April 2014 annual appointment and her September 2016 medical examination to address plaintiff's sudden onset vertigo symptoms. Tr. 303-326. At the September 2016 appointment, plaintiff was assessed with benign positional vertigo[3] and was instructed to do the Epley maneuver at home until symptoms resolved. Tr. 303-306. Plaintiff reported the Epley maneuver successfully resolved her symptoms. Tr. 296. In 2017 and 2018, plaintiff had 20 encounters with her medical providers and complained only of

---

[3] Plaintiff's doctor noted that plaintiff had a history of "no prior vertigo." Tr. 303-306.

Page 4 – OPINION AND ORDER

one reoccurrence of vertigo. Tr. 286-288, 290-293, 296-300, 302-303. On May 16, 2018, plaintiff called her clinic to complain of mild vertigo and ask whether it would be safe to do the Epley maneuver at home because it worked for her two years earlier when she suffered the same symptoms. Tr. 296. Plaintiff was instructed that it would be safe to do the Epley maneuver at home, and that she should call and make an appointment if her vertigo did not resolve; plaintiff never made a follow up appointment. Tr. 297. Plaintiff's statements that the Epley maneuver resolved her vertigo – and that there is only one report of a reoccurrence of vertigo in the two years that followed – indicate that plaintiff's symptoms resolved within 12 months of their onset and would not have more than a minimal effect on plaintiff's ability to work.

Federal appellate review of SSA disability cases is limited; review is deferential to the final non-disability decision of the Commissioner. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Within the Ninth Circuit, the Commissioner's decision must be upheld unless the decision "contains legal error or is not supported by substantial evidence." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).[4] "Substantial evidence 'is more than a mere scintilla,' and means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ford*, 950 F.3d at 1154 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)) (ellipses omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek*, 587 U.S.

---

[4] "For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2017) (quoting *Treichler*, 775 F.3d at 1099).

Page 5 – OPINION AND ORDER

at 102 (citation and internal quotations omitted). "[T]he threshold for such evidentiary sufficiency is not high." Id.

In sum, because the ALJ cited clearly established medical evidence, supported by substantial evidence, her decision is affirmed as to her finding of no severe impairment or combination of impairments. Therefore, even if the Appeals Council's dismissal was improper, this Court affirms the ALJ's decision finding that plaintiff was "not under a disability, as defined in the Social Security Act, at any time from July 30, 2014, the alleged onset date, through December 31, 2016, the date last insured." Tr. 39.

### III. Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen 80 F.3d at 1281 (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [her] work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating her decision, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective

symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding on the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At her 2022 hearing, plaintiff testified she stopped working after 2014 because she did not feel well, e.g. "I had headaches, dizziness. I don't sleep well. I have chronic pain . . . it was difficult for me to do things when I needed to do them." Tr. 53. This testimony directly contradicts plaintiff's 2019 statements on her disability report that she stopped working because her "contract ended and . . . [she] was laid off" and that her conditions did not cause her to make changes in her work activity. Tr. 221-222. Plaintiff continued to testify at her ALJ hearing that she was having headaches in 2014 and 2015 so severe she would be too dizzy to drive and that it was "very, very, difficult" for her to get home. Tr. 53. Plaintiff's hearing testimony is also inconsistent with her medical record which reflect four encounters with medical providers in 2014 and 2015, only one of which concerned dizziness and headaches. Tr. 451, 454, 457, 461-463, 465, 469, 472, 476.[5]

Plaintiff further testified she "could barely stand up," was "crawling around [her] house," and "pretty much got headaches every day" during 2015 and 2016. Tr. 57, 60. As explained in Section II, this testimony is inconsistent with plaintiff's medical record at the time which showed no issues of headache or dizziness except for plaintiff's one instance of vertigo reported in

---

[5] At her appointment on 4/18/2014 – three months before the alleged onset date – plaintiff reported having dizziness and headaches. Tr. 462-463. At plaintiff's appointments on 3/17/2014, 3/9/2015, and 5/6/2015 however, plaintiff complained of other medical issues, did not complain of dizziness or headaches, and was assessed: well nourished and exhibiting no distress. Tr. 451, 454, 457, 465, 469, 472, 476.

September 2016. Tr. 303-326. Despite testifying she "could barely stand up" during 2015 and 2016,[6] plaintiff reported to her medical provider in August 2015 that plaintiff "went on vacation and [her] back pain went away." Tr. 57, 316.

The ALJ did not improperly discount plaintiff's subjective symptoms testimony. The ALJ explained how plaintiff's testimony at the hearing conflicted with plaintiff's earlier statements and the objective medical evidence. Tr. 36-37. "When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt* 53 F.4th at 498 (emphasis omitted). Similarly, the ALJ explained how plaintiff's testimony of being unable to work due to headaches, dizziness, and chronic pain was inconsistent with the medical record and plaintiff's earlier explanation that she stopped working because her contract ended – and that her physical impairments had no impact on her work abilities. Tr. 36-37, 53, 221-222. The ALJ explained further inconsistencies in plaintiff's testimony such as plaintiff denying frequent headaches when meeting with her healthcare provider in September 2016 and not reporting to her medical providers during the period at issue any of the symptoms she later claimed at the hearing. Tr.53-61, 303-326, 377-379.

In sum, because the ALJ cited at least one legally sufficient reason, supported by substantial evidence, her decision is affirmed as to plaintiff's subjective symptom testimony. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ's evaluation of

---

[6] While patient's recollection of medical symptoms is inconsistent with the medical record for the adjudicative period, plaintiff later complains of increased pains and headaches in 2019, 2020, and 2022. Any new symptoms that emerged after December 2016 – such as chronic pains, dizziness, or headaches – are simply not the proper subjects of this appeal. *See O'Neal v. Astrue,* 2010 WL 4386937, *4 (D. Or. Oct. 29, 2020) (reversal was not warranted where "the only suggestion of [a particular impairment] arises after plaintiff's date last insured"); *Clara Ann K. v. Saul*, 2020 WL 5658720, *1 n.3 (S.D. Cal. Sept. 22, 2020) ("the relevant adjudicatory period for determining social security benefits is the period after the alleged onset and before the date last insured").

the claimant's subjective symptom testimony may be upheld even if all the reasons proffered are not valid).

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 6th day of March, 2025.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge